UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff-Respondent,<br><br>v.<br><br>IVAN ROMAN TIZOC,<br><br>                   Defendant-Petitioner. | Case No.: 15-cr-1299-GPC<br>               17-cv-01856-GPC<br><br>**ORDER DENYING IN PART AND DEFERRING A RULING IN PART ON DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255**<br><br>**[ECF NO. 229]** |

Defendant Ivan Roman Tizoc has filed a motion to "vacate, set aside, or correct his sentence" under 28 U.S.C. § 2255. (ECF No. 229.) Respondent, the United States of America, filed a response on October 9, 2017. (ECF No. 232.) Defendant has not filed a reply. For the reasons set forth below, the Court DENIES the motion in part, and defers Defendant's motion pending a responsive filing from the government.

**I. Background**

On May 15, 2015, a grand jury returned an indictment charging Defendant with one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 846, and one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1.) At a change of plea hearing before Magistrate Judge Gallo on February 18, 2016, Defendant pleaded guilty to conspiracy to

1

15-cr-1299-GPC
17-cv-01856-GPC

distribute methamphetamine and possession with intent to distribute heroin. (ECF No. 126.) In the plea agreement, Defendant agreed that he "has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel, and has a clear understanding of the charges and consequences" of his plea, and was pleading guilty "because in truth and in fact defendant is guilty and for no other reason." (ECF No. 125.)

In the plea agreement, Defendant also agreed to waive "to the full extent of the law, any right to appeal or to collaterally attack the conviction and any lawful restitution order, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel." (*Id*. at 14-15.) Defendant also waived "to the full extent of the law, any right to appeal or to collaterally attack the sentence, unless the Court imposes a custodial sentence above the high end of the guideline range . . . recommended by the Government pursuant to this agreement at the time of sentencing," and agreed that if he "believes the Government's recommendation is not in accord with this plea agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived and cannot be raised on appeal." (*Id*.) In the last pages of the plea agreement, Defendant agreed that by "signing this agreement, defendant certifies that defendant has read it (or that it has been read to defendant in defendant's native language)," that he "has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect," and that defendant "is satisfied with counsel's representation," all of which was "defendant's independent opinion, and his/her counsel did not advise him/her about what to say in this regard." (*Id*. at 17-18.) Defendant initialed every page of the plea agreement and signed the final page.

At the change of plea hearing, a certified Spanish interpreter translated the entirety of the proceedings in Spanish for Defendant and other defendants who were also changing their pleas in unrelated cases. (*See* ECF No. 231.) Defendant indicated that he wished to withdraw his prior plea of not guilty and enter a plea of guilty to the charges in the indictment. (*Id*. at 6.) Defendant stated that he understood that he was admitting to the elements of the offenses with which he was charged. (*Id*. at 9). As to the first count,

Defendant stated he understood the elements, which were (1) there was an agreement between two or more persons to distribute methamphetamine, and (2) Defendant joined the agreement knowing of its purpose and intending to help accomplish that purpose. (*Id*. at 9.) As to the second count, Defendant stated he understood the elements, which were (1) Defendant knowingly possessed heroin, and (2) Defendant possessed heroin with the intent to deliver it to another person. (*Id*.) Defendant also indicated that he understood the maximum and minimum penalties for those charges. (*Id*. at 10.) Defendant indicated that he understood that he would be required to forfeit any property in connection with the offenses to the United States. (*Id*. at 11.) Defendant indicated that he understood the sentencing judge was not bound by the sentencing guidelines and that once he was sentenced, he could not withdraw his plea. (*Id*. at 12-13.) Defendant indicated that before he signed his plea agreement, it was translated into a language that he understood. (*Id*. at 6.) Finally, Defendant stated that he was satisfied with the advice he received from his attorney. (*Id*. at 6-7.)

Judge Gallo questioned Defendant about the waiver of appeal and collateral attack section in the plea agreement. Defendant stated that he recalled going over that section of the plea agreement with his counsel, and that at the time he initialed and signed the plea agreement he understood the rights he was waiving. (*Id*. at 12.) Defendant's counsel also stated that he had discussed the plea agreement with Defendant. (*Id*. at 7.) After Defendant formally pled guilty, Judge Gallo found that Defendant's plea was knowing and voluntary, that Defendant fully understood the meaning and effect of the plea agreement, that Defendant understood all of the rights he was waiving, that Defendant understood the consequences of pleading guilty, and that there was a factual basis for the plea. (*Id*. at 15.) This Court entered an order accepting Defendant's guilty plea on March 4, 2016. (ECF No. 133.)

Prior to the sentencing hearing, the Probation Office prepared a presentencing report ("PSR") calculating a total offense level of 39 and a criminal history category of II, resulting in a guideline range of 292 to 365 months. (ECF No. 150 at 21.) The PSR

3

15-cr-1299-GPC
17-cv-01856-GPC

recommended a sentence of 247 months. (*Id*. at 18) The government recommended a sentence of 188 months. (ECF No. 163.)

The offense level calculation consisted of the following. The base offense level under USSG § 2L1.2 was 38. (ECF No. 150 at 21.) Two levels were added under § 2D1.1(b)(5) because the offense involved importation that Defendant knew was unlawful. (*Id*. at 8.) Two levels were added under § 3B1.1(c) because Defendant was identified as a significant distributor who managed his own drug network and distribution of narcotics. (*Id*.) Three levels were deducted under USSG § 3E1.1(a) and (b) for acceptance of responsibility. (*Id*. at 8-9.) The adjusted offense level was left at 39. (*Id*. at 9.) Defendant's criminal history category calculation consisted of the following. One point was added under USSG § 4A1.1(c) as a result of Defendant's prior conviction.[1] (*Id.* at 9.) Two points were added under § 4A1.1(d) because Defendant committed the instant offense while under a criminal justice sentence. (*Id.* at 10.) This left a criminal history score of three, which fell within a criminal history category of II. This Court sentenced Defendant to 200 months imprisonment and issued a criminal judgment on May 23, 2016. (ECF No. 167.) This was below the high end of the guidelines range recommended by the government.

According to Defendant's motion, he "asked counsel to file an appeal, and believed that the attorney was doing so." (ECF No. 229 at 14.[2]) Defendant asserts that he did not find out that his counsel had not filed an appeal until September 13, 2016, well beyond the expiration of the time in which Defendant could file an appeal. (*Id*.) Defendant states that he and his brother "were calling Mr. Baker [Defendant's counsel] after sentencing but [he] never heard back from his despite numerous tries to reach him." (*Id*.) Further, Defendant states that he "was never given a copy of the Plea Agreement,

---

[1] Defendant was convicted in 2012 for one count of possession of a controlled substance for sale in violation of California Health and Safety Code § 11378; one count of transportation of a controlled substance in violation of § 11379(a); and one count of possession of a controlled substance in violation of § 11377(a). (ECF No. 150 at 9).

[2] This pagination of Defendant's motion references the pagination provided by the CM/ECF system.

4

despite numerous requests" and that "counsel has continued to deny me of my right to have access to my legal file." (*Id*. at 15.) Defendant filed the instant motion to vacate, set aside, or correct his sentence on September 12, 2017. In his motion, Defendant claims that he received ineffective assistance of counsel and that he was denied the right to appeal.

## II. Legal Standard under 28 U.S.C. § 2255

Section 2255 authorizes the Court to "vacate, set aside, or correct the sentence" of a federal prisoner on the "ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To warrant relief under section 2255, a prisoner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

## III. Discussion

### A. Limitations Period

With exceptions not applicable here, a § 2255 motion must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f). Here, the Court entered the criminal judgment against Defendant on May 23, 2016 (ECF No. 167), and the conviction became final 14 days later, when no appeal was filed. *See United States v. Gilbert*, 807 F.3d 1197, 1199 (9th Cir. 2015) ("[I]f the movant does not pursue a direct appeal to the Court of Appeals, the conviction becomes final when the time for filing a direct appeal expires."). Defendant did not file the instant motion until September 12, 2017. (ECF No. 229.) Recognizing that the motion was filed more than a year after the criminal judgment became final, Defendant contends that he did not discover that his attorney had not filed a notice of appeal until September 13, 2016. (ECF

No. 229.) Defendant's argument suggests that § 2255(f)'s one-year limitation should be equitably tolled in this case. In this context, equitable tolling applies if (1) some extraordinary circumstance stood in the defendant's way and prevented timely filing, and (2) the defendant has been pursuing his rights diligently. *United States v. Buckles*, 647 F.3d 883, 889 (9th Cir. 2011). "Courts take a flexible, fact-specific approach to equitable tolling." *Gibbs v. Legrand*, 767 F.3d 879, 885 (9th Cir. 2014).

### 1. Extraordinary Circumstance

While an attorney's "garden variety claim[s] of excusable neglect"—such as "simple miscalculation" of time limits—do not constitute an extraordinary circumstance, attorney misconduct can be so egregious as to create an "extraordinary circumstance," justifying equitable tolling. *Holland v. Florida,* 560 U.S. 631, 651-52 (2010).[3] Defendant asserts equitable tolling is appropriate here because his attorney failed to file a notice of appeal and never told Defendant. (ECF No. 229 at 14.) Defendant and his brother tried contacting Mr. Baker, Defendant's counsel, numerous times after sentencing and were unsuccessful. (*Id*.) Defendant asserts counsel never gave him a copy of the Plea Agreement despite numerous requests and "has continued to deny me of my right to have access to my legal file." (*Id*. at 15.) Defendant states he heard back from counsel about a week before filing this petition "just to tell me not to file the 2255 Motion." (*Id*. at 14.)

In *Holland*, the Supreme Court held that an attorney's failure to file a federal petition despite his client's request to do so, and failure to communicate with his client despite letters and phone calls requesting information, was "professional misconduct that . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." 560 U.S. at 649-50.[4] *Holland* referred specifically to the

---

[3] *Maples v. Thomas* clarified *Holland*'s distinction between "garden variety" attorney negligence and egregious attorney misconduct. 565 U.S. 266, 282-83 (2012). *Maples* explained that while agency law binds clients, including federal habeas petitioners, to their attorneys' negligence, "a client cannot be charged with the acts or omissions of an attorney who has abandoned him." *Id*. at 283. An attorney's failure to communicate about a key development in his client's case can, therefore, amount to attorney abandonment and thereby constitute an extraordinary circumstance. *Id*. at 282-83.
[4] The Supreme Court remanded the case for further proceedings because the District Court erroneously relied on a lack of diligence, and because the Court of Appeals erroneously relied on an overly rigid per

types of ethical violations alleged here: the failure to communicate with a client, the failure to implement a client's reasonable requests, as well as the abandonment of a client. *Id*. at 652-53. *See Porter v. Ollison*, 620 F.3d 952, 960 (9th Cir.2010) (interpreting *Holland* to treat "violations of canons of professional responsibility" as evidence that attorney's conduct was "extraordinary"); *see also Spitsyn v. Moore*, 345 F.3d 796, 798, 801 (9th Cir. 2003) (an attorney's failure to file a habeas petition at all, despite being hired almost a year before the habeas deadline, was sufficiently egregious to constitute extraordinary circumstances where petitioner contacted his attorney three times and filed two complaints with the state bar).

Here, counsel's misconduct, as alleged, resembles that described in *Holland*. Counsel failed to file Defendant's notice of appeal despite Defendant's requests to do so. Counsel also failed to communicate with Defendant despite various pleas inquiring as to the status of the case. Petitioner contends that counsel contacted him one week prior to filing of his § 2255 motion only to tell him not to file. Further, counsel failed to inform Defendant that a notice of appeal had not been filed.

Similarly in *Gibbs*, the court noted that it was absolutely critical that Gibbs "had trouble communicating with [his] attorney" and that failure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings constitutes attorney abandonment. 767 F.3d at 886. Attorneys are generally required to "perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, [and] to keep their clients informed of key developments in their cases." *Id*. (citing *Holland*, 560 U.S. at 652–53). Gibbs's attorney's behavior in failing to notify Gibbs of the Nevada Supreme Court's

---

se approach. *Holland*, 650 U.S. at 653-54. The Court noted that no lower court had yet considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief. *Id*. The Court was mindful that it was a court of final review, not first review, and that when faced with a fact-intensive inquiry, the decisions is better left to the lower courts. *Id*. at 654. Because the Court concluded that the District Court's determination must be set aside, it left it to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings might indicate that respondent should prevail. *Id*. Nonetheless, the Court finds *Holland's* reasoning helpful as to the issue of attorney misconduct.

decision "constituted abandonment, and thereby created extraordinary circumstances sufficient to justify equitable tolling." *Id*.

The Government argues that equitable tolling should not apply because Defendant's assertion that he did not know his counsel failed to file an appeal contradicts with statements he gave under oath during his plea colloquy. (ECF No. 232 at 12.) The Court finds this argument unpersuasive. What was said at the plea colloquy is irrelevant to Defendant's counsel's actions after sentencing. Nothing stated during the change of plea hearing could contradict the assertion that Defendant's counsel never informed Defendant about his failure to file an appeal.

For the reasons set forth above, the Court is persuaded that Defendant has satisfied the extraordinary circumstance requirement for equitable tolling.

### 2. Diligence

As to diligence, Defendant must show that he took "reasonable, not maximum feasible care" to pursue his claims. *Gibbs*, 767 F.3d at 889 (internal quotation marks omitted). "[R]easonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011). As with other equitable considerations, determining whether a petitioner acted with reasonable diligence is a fact-specific inquiry. *Holland*, 560 U.S. at 649-50. Here, Defendant's argument suggests he relied on his attorney to file a notice of appeal because he had instructed him to do so multiple times.

In *Gibbs*, the court held that the petitioner was "adequately diligent" when he wrote to his attorney three times over the course of seven months to find out the status of his petition. 767 F.3d at 890. On one occasion, Gibbs wrote to his attorney, asking him to supplement his briefing before the Nevada Supreme Court with new case law and to stay in touch. *Id*. at 893. Several months later Gibbs wrote to his attorney again, asking why he had not responded to his last letter. *Id*. Gibbs later discovered his appeal had been denied. Gibbs immediately wrote to his attorney and promptly asked the Nevada Supreme Court for a copy of the order denying his appeal. *Id*. After he did not hear back

8

from his attorney, he fired him and demanded return of his files to file his own pro se habeas petition. *Id*.

Relatedly, in *Busby*, the petitioner hired his former counsel to file a federal habeas petition more than one year prior to the filing deadline and paid him $20,000 advance for this service. 661 F.3d at 1012. The petitioner provided counsel with his files and repeatedly made inquiries on the progress of his case. *Id*. Not only did the attorney not file a timely habeas petition, he filed no petition at all, in spite of his numerous promises to the contrary. *Id*. When the petitioner eventually sought his files from the attorney, the attorney took six months to return them. *Id*. Counsel then terminated the representation two weeks prior to the habeas deadline and returned the petitioner's files two months after the deadline lapsed. *Id*. The court concluded that "a reasonable litigant in the Petitioner's situation who is represented by experienced counsel, if asked about the status of his or her lawsuit, would be justified in replying, 'My lawyer is handling it.'" *Id*. at 1015. Emphasizing that the applicable standard was only *reasonable* diligence, the court concluded that Busby's multiple efforts to reach out to his lawyer demonstrated reasonable diligence. *Id*.

Similarly here, Defendant relied on his attorney to file a notice of appeal after having instructed him to do so twice. Defendant asserts that counsel "promised him to file an appeal during the signing of the plea agreement, where he stated '10 years,' 'only one count,' and 'or I will file an appeal for you…'" (ECF No. 229 at 15.) After sentencing, "[Defendant] instructed his attorney to file the appeal, as [Defendant] was devastated by the leng[th] of sentence he receive[d]." (*Id*.) Defendant and his brother tried contacting Defendant's counsel after sentencing numerous times and never heard back from him. Defendant believed counsel had filed a notice of appeal and took no further action because he had been told that appeal process was lengthy and needed to allow time to receive mail confirmation. After Defendant discovered that counsel had failed to file a notice of appeal, Defendant requested his legal file so that he could file his own § 2255 motion.

9

Since Defendant relied on counsel to file his notice of appeal, tried contacting him numerous times, and did not have access to his legal files, requiring him to do more would expand the diligence requirement to more than what is required. *See Gibbs*, 767 F.3d at 890-91 ("The notion that Gibbs should have prepared his own habeas petition . . . even while he believed his Nevada Supreme Court case was still pending and many of his federal claims therefore unexhausted . . . improperly raises the standard from 'reasonable' to 'maximum feasible' diligence.").

Therefore, the Court finds that Defendant satisfies the diligence requirement for equitable tolling, and that the motion is timely.

## B. Waiver of Appeal and Collateral Attack

The government contends that Defendant waived the arguments pursued in his 2255 motion through the appellate and collateral attack section in his plea agreement. "The Ninth Circuit has upheld the enforceability of waivers in similar plea agreements, reasoning that the right to appeal or collaterally attack one's sentence [under § 2255] is derived by statute, and '[a] knowing and voluntary waiver of a statutory right is enforceable.'" *Entzminger v. United States*, No. 3:12-cr-3450-H, 2015 WL 13333346, at *5 (S.D. Cal. Feb. 18, 2015) (quoting *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993)). "The scope of a § 2255 waiver, however, may be subject to potential limitations," such as "if the trial court did not satisfy certain requirements under Rule 11," "where the sentence imposed is not in accordance with the negotiated agreement, or if the sentence imposed violates the law." *Mariscal v. United States*, No. 3:14-cr-02460, 2017 WL 1346641, at *1 (S.D. Cal. Apr. 11, 2017). Moreover, "a waiver may not 'categorically foreclose' defendants from bringing § 2255 proceedings involving ineffective assistance of counsel or involuntariness of waiver." *Id*. Here, the record indicates that Defendant made a clear waiver of his right to collaterally attack his sentence and this his collateral attack is barred by the waiver in his plea agreement. (ECF No. 125.) Thus, he may pursue in this motion only claims falling within the exceptions discussed above.

10

15-cr-1299-GPC
17-cv-01856-GPC

### i. Whether Defendant's Waiver was Knowing and Voluntary

Defendant contends he did not knowingly and voluntarily waive his right to collaterally attack his sentence. The Court is unpersuaded. Defendant asserts that his counsel "coerce[d] the signing of the plea agreement by making a promise for a ten year sentence and the assurance of an appeal if the sentence was higher." (ECF No. 229 at 14.) The change of plea hearing transcript suggests that was not the case. (ECF No. 232.) During the change of plea hearing (at which Defendant was provided translation services), Judge Gallo asked Defendant if he had discussed the sentencing guidelines and how they would be used by the sentencing judge, to which Defendant responded yes. (ECF No. 232-1 at 12.) Judge Gallo also asked Defendant if he understood that the sentencing guidelines are advisory for the sentencing judge and that the judge retains the discretion to depart from the guidelines and sentence him to the maximum allowed by law, to which Defendant responded yes. (*Id*. at 12-13.) Further, Judge Gallo asked Defendant if he understood that if the sentencing guidelines recommended a sentence less than the mandatory minimum, that the judge would have no choice but to sentence he to the mandatory minimum, to which Defendant responded yes. (*Id*. at 13.) Finally Judge Gallo asked Defendant if he understood the maximum sentence that he faced and the rights he was giving up by pleading guilty and whether he still wanted to plead guilty, to which he responded yes. (*Id*.) Defendant read the plea agreement and reviewed it with his counsel. (*Id*. at 6-7.) Judge Gallo asked Defendant whether he understood the agreement and the rights he was giving up. (*Id*. at 15.) Defendant knew what he was pleading guilty to and signed the agreement. (*Id*.)

Judge Gallo asked Defendant if he recalled going over the waiver provisions of the plea agreement with his counsel before he signed and initialed the agreement, to which Defendant responded yes. (*Id*. at 7.) Judge Gallo asked Defendant whether the plea agreement had been read and translated into a language that Defendant could understand prior to signing and initialing the agreement, to which Defendant responded yes. (*Id*.) Judge Gallo also asked Defendant's counsel whether he believed that Defendant fully

11

15-cr-1299-GPC
17-cv-01856-GPC

understood the waiver provisions of the plea agreement, and counsel responded that he did. (*Id.*) Judge Gallo also asked Defendant's counsel whether he believed that Defendant was pleading guilty voluntarily, to which counsel responded yes. (*Id.* at 7.)

In light of Defendant's responses during the change of plea hearing and his having initialed each page of the plea agreement (and signing the final page), the Court concludes that it is implausible that Defendant thought he was guaranteed no more than a ten-year sentence. (*Id.* at 15.)

### ii. Ineffective Assistance of Counsel Claim

As stated above, Defendant's waiver of his right to collaterally attack his sentence is not effective with respect to claims of ineffective assistance of counsel ("IAC"). An individual claiming IAC must show (1) "deficient performance by his counsel" and (2) "that the performance prejudiced" the individual. *Entzminger*, 2015 WL 13333346, at *1.

> Counsel's performance is deficient only if it falls below an objective standard of reasonableness. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." When considering a claim of ineffective assistance of counsel, a reviewing court must be highly deferential to counsel's performance. The [defendant] must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." A [defendant] must show "that counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Reasonable tactical decisions that a petitioner later questions do not create ineffective assistance claims.
>
> To show prejudice, the Petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 687–89, 694 (1984)) (additional citation omitted). Here, Defendant's IAC claim can be categorized into three discrete complaints, consisting of his counsel's failure to (1) file an appeal despite Defendant's explicit

12

request to do so, (2) provide him with an interpreter during plea negotiations, (3) object to sentencing enhancement relating to leadership role, and (4) obtain a dismissal of the second count against Defendant.

Defendant argues that his counsel was ineffective in light of his failure to file a timely notice of appeal despite Defendant's wish to do so. The two Strickland prongs are satisfied when a defendant shows, without identifying any ground for appeal, "that he explicitly told his lawyer to appeal his case and his lawyer refused."[5] *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005). In *Sandoval-Lopez*, the Ninth Circuit offered the following guidance in this procedural scenario:

> If a defendant, even one who has expressly waived his right to appeal, files a habeas petition after sentencing and judgment claiming that he ordered his attorney to appeal and his attorney refused to do so, two things can happen. The district court can hold an evidentiary hearing to decide whether petitioner's allegation is true, and if it is, vacate and reenter the judgment, allowing the appeal to proceed. Or, if the state does not object, the district court can vacate and reenter the judgment without a hearing and allow the appeal to proceed, assuming without deciding that the petitioner's claim is true.

---

[5] The Court finds persuasive Judge Anello's related discussion of this issue:
> The Court is aware that district courts in this and other circuits have held that a defendant's valid collateral attack waiver precludes a post-plea ineffective assistance of counsel claim for failure to file a notice of appeal. *See, e.g.*, *United States v. Rico-Bustamante*, 2010 WL 5467052, at *3 (D. Ariz. Sept. 10, 2010); *Lewis v. United States*, 2009 WL 4694042, at *5 (D. Ariz. Dec. 4, 2009); *see also*, *United States v. Rivers*, 2011 WL 484190, at *3 (D. Kan. Feb. 7, 2011); *United States v. Arevalo*, 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010). The Ninth Circuit has not ruled on this exact issue, and until that time this Court prefers to follow the more prudent course and allow the claim to proceed despite finding that Defendant validly waived his right to collateral attack. In the Ninth Circuit, even if a defendant validly waives his right to appeal, an attorney is ineffective for failing to file a notice of appeal, "as contrary to common sense as it seems." *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1196 (9th Cir. 2005). It stands to reason, then, that even if a defendant validly waives his right to collateral attack, he should be permitted to bring a failure-to-file claim in a 2255 motion. Otherwise, he could not bring the claim at all, having lost his opportunity to direct appeal.

*United States v. Beltran*, No. 12-cr-02-MMA, 2014 WL 12693866, at *5 n.2 (Apr. 28, 2014).

*Id.* **In accordance with this guidance, the Court orders the government to file, within seven days of this order, a notice of whether it objects to the Court vacating and re-entering the criminal judgment in this case without holding an evidentiary hearing, so as to allow Defendant to file a timely notice of appeal**. If the government objects, the Court will hold an evidentiary hearing to determine whether Defendant properly requested his counsel to file an appeal.

In light of Defendant's potentially meritorious claim that his counsel provided ineffective assistance of counsel by failing to timely file an appeal of Defendant's conviction and sentence, the Court does not yet reach the other IAC arguments offered by Defendant in his motion. If the government does not object to the Court vacating and re-entering the criminal judgment, Defendant may raise those grounds on his direct appeal (and if they are rejected, he may raise them in a timely and appropriate § 2255 motion thereafter). If the government objects to the Court vacating the criminal judgment and after an evidentiary hearing the Court concludes that Defendant has failed to demonstrate IAC on the ground that his counsel failed to file a timely appeal, the Court will address Defendant's remaining IAC arguments. At this point, however, the Court sees no reason to adjudicate, preemptively, Defendant's other IAC arguments when he may have the opportunity to develop those points more fully during his direct appeal.

## IV. Conclusion

For the reasons stated above, the Court DENIES in part Defendant's § 2255 motion except for the claim that Defendant's counsel provided ineffective assistance, to which the Court defers its ruling. The Court ORDERS the government to file, no later than seven days from the date this order is issued, a notice of whether or not it objects to the Court vacating and re-entering the judgment in this case to permit Petitioner to file a timely appeal.

**IT IS SO ORDERED.**

Dated: March 20, 2018

Hon. Gonzalo P. Curiel
United States District Judge